# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| DIANA R. HUMBLE, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 5:17-CV-192 (MTT) |
| CIRRUS EDUCATION GROUP, INC., | ) |
| Defendant. | ) |

## ORDER

Defendant Cirrus Education Group, Inc. ("Cirrus Academy") has moved to dismiss Plaintiff Diana R. Humble's claims and strike factual allegations regarding Ginger Snow and Susan Campbell.[1] Doc. 7. For the following reasons, the motion to dismiss is **GRANTED in part** and **DENIED in part**. The motion to strike is **DENIED**.

## I. BACKGROUND

Humble is a Caucasian female who began working as a special education teacher at Cirrus Academy on or around July 29, 2016. Doc. 1 ¶¶ 4, 6. The majority of Cirrus Academy's employees are African-American. *Id.* ¶ 9. Humble claims that, "[f]rom the beginning of her employment," she was treated differently from her African-American co-workers. *Id.* ¶ 11. She alleges that she and two white co-workers, Snow and Campbell, "received the brunt of the disparate treatment, harassment, and

---

[1] Snow and Campbell are plaintiffs in another case before the Court. *Snow et al. v. Cirrus Educ. Grp., Inc.*, No. 5:17-cv-208, Doc. 1 (May 31, 2017).

retaliation" based primarily on their race. *Id.* ¶ 10. Humble alleges that, "[u]nlike other teachers,"

> (1) "[she and Snow] were provided with little-to-no start up furniture or supplies for their classrooms;"
>
> (2) she was "not initially provided with a planning period;"
>
> (3) she was "assigned many additional assignments other than the duties assigned to her position;"
>
> (4) she was not provided "with supplies and materials necessary for certain programs or instruction;"
>
> (5) "[she along with Campbell and Snow] were 'written up' for actions that were considered acceptable when taken by their black coworkers;" and
>
> (6) she was "largely ignored" in November by Dr. Ashanti Johnson, the African-American Superintendent of Cirrus Academy.

*Id.* ¶ 11. Humble also alleges that her annual salary was approximately $5,000-$10,000 less than that of her African-American coworkers in similar positions. *Id.* ¶ 12.

In August 2016, Humble "began raising concerns in email messages and meetings with her supervisors regarding Cirrus Academy's compliance with state and federal requirements for special education." *Id.* ¶ 16. "At a certain point, [Humble] felt compelled to report her concerns to the Georgia Department of Education," but allegedly received threats from her supervisors not to contact the department or report any violations. *Id.* ¶¶ 16-17. After eventually contacting the Georgia Department of Education, Humble alleges that the hostility and retaliation from her supervisors increased. *Id.* ¶ 17. On January 27, 2017, Humble filed a third-party complaint with the

Georgia Department of Education under the Individuals with Disabilities in Education Act to report her concerns about the implementation of Cirrus Academy's individualized education program. *Id.* ¶ 18. The Georgia Department of Education subsequently found that Cirrus Academy did not comply with the requirements for implementing an individualized education program. *Id.*

Around November 2016, Humble states she received "frequent anonymous text messages that were littered with profanity, racial epithets, and even threatens [sic] of physical violence." *Id.* ¶ 13. Snow and Campbell also allegedly received these messages. *Id.* While Humble could not identify the sender of the messages, she claims the content and pictures contained therein show the messages were sent by another Cirrus Academy employee. *Id.* Humble states that Cirrus Academy contacted the Bibb County Sheriff's Office to investigate these text messages but took no further action "to avert or curtail the continued harassment." *Id.* ¶ 15. Humble also alleges that in December 2016, she received an email, "which appeared to be from Dr. Jackson [sic]," suggesting that Humble should resign and not "underestimate" Johnson's "power and abilities." *Id.* ¶ 14.

Around January 2017, Humble went on unpaid leave due to the alleged harassment and anonymous threats of physical violence. *Id.* ¶ 19. On January 26, 2017, Humble timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 20. Specifically, in the EEOC charge, Humble alleged that:

> I began my employment with the above employer on July 25, 2016, as a Special Education Teacher. On October 27, 2016, and continuing, I have been subjected to racially hostile emails. I have also been harassed and bullied by

> other teachers. I complained to Dr. Ashanti Johnson, Superintendent, and to date, no action has been taken to alleviate my concerns. I believe that I have been discriminated against because of my race (White), in violation of Title VII of the Civil Rights Act of 1964, as amended.

Doc. 7-2 at 2.[2] Humble received her right-to-sue letter on February 20, 2017. Doc. 1 ¶ 20.

In Count I of her complaint, Humble asserts a claim for "Racial Discrimination and Harassment in Violation of Title VII of the Civil Rights Act." *Id.* ¶ 22. The parties assume, and the Court assumes as well for the purposes of Cirrus Academy's motion, that Humble asserts three specific Title VII claims: (1) a hostile work environment claim; (2) a disparate treatment claim; and (3) a pay discrimination claim. Docs. 7-1 at 4; 9 at 3. In Count II, Humble asserts a claim for "Harassment and Retaliation in Violation of O.C.G.A. § 45-1-4." *Id.* ¶¶ 28-29.

In its motion to dismiss, Cirrus Academy argues that (1) Humble's disparate treatment and pay discrimination claims are outside the scope of the EEOC charge and thus Humble failed to exhaust her administrative remedies; (2) all of Humble's claims fail to state a claim; (3) the Court lacks jurisdiction over Humble's state law claims; and (4) there is no recognized cause of action for harassment under O.C.G.A. § 45-1-4. Doc. 7-1 at 1. Cirrus Academy has also moved to strike the allegations in the complaint regarding the other white teachers, Ginger Snow and Susan Campbell, because these allegations "are immaterial, impertinent, and scandalous." *Id.* at 2.

---

[2] Humble does not dispute that this document is a true and complete copy of her EEOC charge.

## II. DISCUSSION

A.  **Motion to Dismiss Standard**

The Federal Rules of Civil Procedure require that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1261 (11th Cir. 2006) (quotation marks and citation omitted). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (quotation marks and citation omitted). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted).

**B.     Failure to Exhaust Administrative Remedies**

Cirrus Academy contends that Humble's Title VII disparate treatment and pay discrimination claims should be dismissed because "they were not asserted in and do not reasonably arise out of the Charge of Discrimination [Humble] filed with the EEOC." Doc. 7-1 at 3.  To bring a Title VII claim in federal court, a plaintiff must first exhaust her administrative remedies by filing a charge of discrimination with the EEOC.  *Gregory v. Dep't of Human Resources*, 355 F.3d 1277, 1279 (11th Cir. 2004).  This filing "serves two significant functions: (1) notification to the employer that a discrimination charge has been lodged with the EEOC; and (2) initiation of the agency's investigation of the complaint."  *Pijnenburg v. West Georgia Health Sys., Inc.*, 255 F.3d 1304, 1306 (11th Cir. 2001).  Accordingly, actionable claims in a subsequent lawsuit are limited to "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  *Gregory*, 355 F.3d at 1280 (quotation marks and citation omitted).  Moreover, while judicial claims that "amplify, clarify, or more clearly focus the allegations in the EEOC complaint," are allowed, "allegations of new acts of discrimination are inappropriate."  *Id.* at 1279-80 (quotation marks and citation omitted).

As noted, Humble agrees that her complaint attempts to assert three Title VII claims in Count I: (1) a hostile work environment claim; (2) a disparate treatment claim; and (3) a pay discrimination claim.  Humble's disparate treatment claim appears to be based on allegations in her complaint that she was treated differently from African-American teachers and employees, such as not being provided with necessary supplies and materials and being "written up" for actions considered acceptable when taken by African-American co-workers.  Doc. 1 ¶ 11.  Her pay discrimination claim is based on

her allegation that her annual salary was approximately $5,000-$10,000 less than that of African-American co-workers in similar positions but with less experience, education, or certifications. *Id.* ¶ 12. However, Humble's EEOC charge did not mention the disparate treatment and pay discrimination claims, or the facts upon which the claims are based. Rather, she only complained of:

> (1) racially hostile emails;
>
> (2) harassment and bullying by co-workers; and
>
> (3) the failure of Cirrus Academy's superintendent to "alleviate [her] concerns."

Doc. 7-2 at 2. Apparently recognizing this deficiency, Humble argues that her EEOC charge "describes, what amounts to, a culture of racial discrimination." Doc. 9 at 5. Even if the specific facts alleged in the EEOC "amount" to a "culture of racial discrimination," which they do not, that does not satisfy Humble's obligation to administratively exhaust her disparate treatment and pay discrimination claims. And contrary to Humble's assertion that the facts alleged in her EEOC charge are "more general and apply to a great number of individuals with whom she worked," the charge describes specific instances of racial harassment that she experienced through hostile emails and bullying. *Id.* Thus, the charge did not give Cirrus Academy notice of any Title VII claim other than the one alleged in her EEOC charge—the hostile work environment claim.

Moreover, the separate claims for disparate treatment and pay discrimination cannot "reasonably be expected to grow out of" Humble's specific allegations of racial harassment in her charge. A reasonable EEOC investigator could not have concluded that Humble was complaining of pay discrimination or any disparate treatment except in

the form of racial harassment.  Additionally, the facts upon which Humble bases her disparate treatment and pay discrimination claims appear to fall outside the time frame of the racial harassment alleged in the EEOC charge.  For example, in her EEOC charge, Humble gave a very specific date of when the alleged harassment began—October 27, 2016.  Doc. 7-2 at 2.  But her complaint alleges that she was treated differently from other African-American teachers and employees "[f]rom the beginning of her employment" on July 29, 2016.[3]  Doc. 1 ¶¶ 6, 11.

Finally, while Humble argues that the Court should liberally construe her EEOC charge because it was prepared without the assistance of counsel (Doc. 9 at 5), even the most liberal reading of her charge reveals nothing suggesting claims for disparate treatment and pay discrimination.  Accordingly, because Humble's EEOC charge only alleges facts supporting a hostile work environment claim, she cannot now maintain additional claims for disparate treatment and pay discrimination.[4]

---

[3] With regard to her pay discrimination claim, Humble does not say when the discrimination began; however, it presumably began when she was hired and her salary was set.  Doc. 1 ¶ 12.

[4] Humble also seems to argue that, because she checked the "continuing action" box on her EEOC charge, she has exhausted her administrative remedies for the disparate pay and treatment claims.  Doc. 9 at 5.  To the extent Humble attempts to save her claims through the continuing violation doctrine, that is inapplicable here.  That doctrine allows a plaintiff, when the plaintiff has timely filed a claim regarding an ongoing discriminatory act, to bring an untimely claim based on the same ongoing discriminatory act.  But Humble's pay discrimination and disparate treatment claims are discrete actions for which administrative remedies must be exhausted, regardless of whether Humble has exhausted her administrative remedies as to other related claims.  *Ledbetter v. Goodyear Tire and Rubber Co., Inc.*, 421 F.3d 1169, 1179 (11th Cir. 2005) ("[D]iscrete acts of discrimination constitute a separate actionable unlawful employment practice . . . [and] [e]ach discriminatory act starts a new clock for filing charges alleging that act. . . .  [A plaintiff] must file a charge within either 180 or 300 days of the date of a discrete discriminatory or retaliatory act or lose the ability to recover for it regardless of whether the time-barred acts are closely related to acts alleged in a timely-filed charge." (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-113 (2002)).  Simply put, that Humble exhausted her hostile work environment claim and stated it was a "continuing action" does not allow for her to bring other unexhausted claims that merely relate to that claim.

**C.      Failure to Allege a Plausible Hostile Work Environment Claim**

Cirrus Academy argues that Humble's hostile work environment claim should be dismissed because it "is not plausible on its face" and thus is not sufficiently pled. Doc. 7-1 at 9. To establish a prima facie case of racially hostile work environment, Humble must show: (1) that she belongs to a protected group; (2) that she has been subject to unwelcome harassment; (3) that the harassment was based on her race; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citation omitted).

Here, Humble claims she received frequent text messages "that were littered with profanity, racial epithets, and even threatens [sic] of physical violence."[5] Doc. 1 ¶ 13. Cirrus Academy does not seriously dispute the first three elements of Humble's hostile work environment claim. Clearly Humble belongs to a protected group, she was subjected to unwelcome harassment by allegedly receiving hostile text messages, and the text messages relate to her race. While Cirrus Academy argues that Humble cannot show the fourth element of a hostile work environment claim (Doc. 11 at 7), Humble's allegation that she frequently received racist and physically threatening messages from a co-worker is clearly sufficient to allege that the messages reasonably altered the terms and conditions of her employment and created a discriminatorily abusive working environment. Doc. 1 ¶ 13; *Jones*, 683 F.3d at 1292 (citation omitted).

---

[5] The parties also argue over whether the facts alleged in paragraph 11 of Humble's complaint, which, again, appear to be the basis for Humble's disparate treatment claim, can support a hostile work environment claim. Docs. 1 ¶ 11; 7-1 at 10; 9 at 8. It is not necessary, however, to discuss those facts because Humble has otherwise pled enough facts to support a hostile work environment claim.

The main thrust of Cirrus Academy's argument for dismissal is that Humble has failed to establish the fifth element of a hostile work environment claim—that she "has not pleaded sufficient facts to show [Cirrus Academy] is liable for any of the alleged conduct." Doc. 7-1 at 12. When the alleged harassment is by a co-worker, an employer "will be held directly liable if it knew or should have known of the harassing conduct but failed to take prompt remedial action." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir. 2002) (citation omitted). Cirrus Academy's contention that Humble's complaint "does not contain any factual allegations sufficient to support a claim that [Cirrus Academy] or [sic] knew or should have known about the conduct and failed to take corrective action," is simply false. Doc. 7-1 at 12. Cirrus Academy incorrectly states that "[Humble] alleges *she* contacted the Bibb County Sheriff's Office to investigate the messages." *Id.* at 13 (emphasis added). In fact, Humble alleges that *Cirrus Academy* "contacted the Bibb County Sheriff's Office to investigate these messages." Doc. 1 ¶ 15. Humble therefore contends that because Cirrus Academy contacted the sheriff's office, it had knowledge of the messages and failed to take any further remedial action to stop the harassment. *See id.* Accordingly, the Court finds that Humble has stated a plausible claim for hostile work environment under Title VII.

**D. State Law Claims**

    **1. Supplemental Jurisdiction**

Pursuant to the Georgia Whistleblower Act, O.C.G.A. § 45-1-4, Humble also asserts claims for harassment and retaliation. Doc. 1 ¶¶ 27-32. Cirrus Academy argues that these claims should be dismissed because the Court lacks jurisdiction over them. Doc. 7-1 at 14-16. Because the Court has original, federal question jurisdiction

over the hostile work environment claim under Title VII, the relevant inquiry is whether the Court should exercise supplemental jurisdiction over the Georgia Whistleblower Act claims.

"The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004). The presence of supplemental jurisdiction is governed by 28 U.S.C. § 1367. Subsection (a) of that statute provides in relevant part that:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). The Court's power to adjudicate the state law claims therefore turns on whether the state law claims are "so related" to the Title VII hostile work environment claim such that they form part of the same case or controversy. "In deciding whether a state law claim is part of the same case or controversy as a federal issue, we look to whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence." *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996) (citation omitted). Put another way, the state law claims must "arise out of a common nucleus of operative facts." *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1310 (11th Cir. 2016).

Here, Humble's Title VII claim and state law claims appear to share a common nucleus of operative facts. The facts underlying the state law claims involve Humble "raising concerns in email messages and meetings with her supervisors regarding Cirrus Academy's compliance with state and federal requirements for special

education," and, as a result of contacting the Georgia Department of Education, allegedly experiencing increased hostility and retaliation from her supervisors. Doc. 1 ¶¶ 16-17. The underlying fact for the Title VII hostile work environment claim is that Humble allegedly received frequent text messages "littered with profanity, racial epithets, and even threatens [sic] of physical violence" from a co-worker. *Id.* ¶ 13. Cirrus Academy argues that the Title VII and state law claims "involve different events, time periods, and actors." Doc. 7-1 at 16. But it seems plausible, particularly given that "[t]hroughout her employment," Humble's supervisors allegedly threatened her not to contact the Georgia Department of Education, that Humble allegedly received the hostile messages not just because of her race but because she contacted the Georgia Department of Education. Doc. 1 ¶ 17. It is also plausible that these messages were encouraged by Humble's supervisors. Thus, the federal and state law claims seem to derive from a common nucleus of facts. Because the Georgia Whistleblower claims do not raise a novel or complex issue of state law, nor do they substantially predominate over the Title VII claim, the Court chooses to exercise supplemental jurisdiction over them. *See* 28 U.S.C. 1367(c).

**2. Failure to Sufficiently Plead Georgia Whistleblower Act Claims**

Cirrus Academy also moves to dismiss Humble's retaliation claim brought under the Georgia Whistleblower Act because it is insufficiently pled.[6] Doc. 7-1 at 17. Under the Georgia Whistleblower Act, a public employer may not "retaliate against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency. . . ." O.C.G.A. § 45-1-4(d)(2). To establish

---

[6] The parties seemingly agree that there is no cause of action for harassment under O.C.G.A. § 45-1-4. Docs. 9 at 12-13; 11 at 9.

a prima facie case for retaliation, Humble must show that (1) Cirrus Academy is a public employer; (2) she disclosed a violation of or noncompliance with a law, rule, or regulation to a supervisor or agency; (3) she experienced retaliation; and (4) there is a causal relationship between her disclosure and the adverse employment action. *Lamar v. Clayton Cty. Sch. Dist.*, 605 F. App'x 804, 806 (11th Cir. 2015) (citing *Forrester v. Ga. Dep't of Human Servs.*, 308 Ga. App. 716, 722, 708 S.E.2d 660, 665-66 (2011)) (noting that Georgia courts borrow the *McDonnell Douglas* burden-shifting framework for retaliation claims brought under the Georgia Whistleblower Act).

While Humble's complaint is far from a model of clarity in part because it does not state separately the allegations upon which her claims are based, Humble has clearly alleged sufficient facts to establish the first three elements of her retaliation claim. However, it is not clear what the alleged adverse employment action is, much less whether there is a causal connection. Accordingly, the Court **GRANTS** Cirrus Academy's motion to dismiss Humble's Georgia Whistleblower Act retaliation claim but grants Humble the opportunity to amend her complaint within 14 days to allege in Count II the facts she contends establish the elements of her retaliation claim. No other amendment to the complaint shall be made.

**F.     Motion to Strike**

In addition to its motion to dismiss, Cirrus Academy has moved to strike Humble's allegations relating to two other white employees at Cirrus Academy, Ginger Snow and Susan Campbell. Doc. 7-1 at 19. Pursuant to Federal Rule of Civil Procedure 12(f), "[a] court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Cirrus Academy contends

that because Humble "asserts her claims in an individual capacity only, and [she] has represented to the Court [in the Civil Cover Sheet] that this action is not related to any other pending action," any allegations relating to Snow and Campbell "is immaterial to the resolution of whether [Cirrus Academy] is liable for the claims [Humble] has asserted." Doc. 7-1 at 19-20. The Court disagrees. While Humble has asserted her claims in her individual capacity, that does not mean the allegations pertaining to Snow and Campbell are "immaterial." Most certainly, they are material to substantiate Humble's claims. Further, as Humble points out, because Snow and Campbell had not yet filed their complaint in this Court when Humble filled out her Civil Cover Sheet, she could not have identified at the time that the two cases were related. Doc. 9 at 14. Accordingly, the Court **DENIES** the motion to strike. If Cirrus Academy is concerned of the possible prejudice that may arise should this case proceed to trial, it may raise that concern at trial under Federal Rule of Evidence 403.

### III. CONCLUSION

For the foregoing reasons, Cirrus Academy's motion to dismiss is **GRANTED in part** and **DENIED in part**. Specifically, Cirrus Academy's motion to dismiss Humble's Title VII claims of disparate treatment and pay discrimination is **GRANTED** because Humble has failed to exhaust her administrative remedies as to those claims. However, Cirrus Academy's motion to dismiss Humble's Title VII hostile work environment claim is **DENIED** because it is administratively exhausted and sufficiently pled. Cirrus Academy's motion to dismiss Humble's retaliation claim under the Georgia Whistleblower Act is **GRANTED**. However, the Court grants Humble leave to amend

her complaint within 14 days of the date of this Order to allege in Count II the facts supporting her retaliation claim. The motion to strike is **DENIED**.

**SO ORDERED**, this the 4th day of December, 2017.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT